And we move to the second case this morning, United States versus Franco? Yes. Good morning, Your Honor. You may proceed. Good morning, Your Honor. May I please the court. My name is Emmanuel Franco and I represent the defendant appellant Mr. Roland Pulliam in this case. On November 7, 2018, a federal jury convicted Mr. Pulliam on a single count under section 922G1 for being a felon in possession of a firearm. Now, set forth in our briefs, there are multiple reasons why this court should reverse that jury verdict. But today, I'd like to focus on two principal arguments. First, the erroneous jury instructions under Rahib. And second, the Rule 403 argument. To begin, Your Honors, with the erroneous instructions, there's no debate here that there were a clearly erroneous set of instructions given at Mr. Pulliam's trial. What's in dispute, however, is the effect that those erroneous instructions had on the jury's decision to convict Mr. Pulliam. And Mr. Pulliam has shown that those erroneous instructions very much did affect the outcome of his trial, and moreover, the fairness and integrity of his proceedings, which is required under plain error review. Specifically, Your Honors, Mr. Pulliam has shown that at his trial, the government did not present evidence speaking to the question of knowledge of felon status. Had his jury been given a proper instruction, including, after Rahib, that knowledge of felon status element, they would have been told that the government needed to prove this element beyond a reasonable doubt, moreover. It would have then turned, as all juries do, to the evidence presented to them at trial and would have seen nothing speaking to the question of knowledge of felon status. Under those circumstances, Your Honors, there's a reasonable probability that his jury would have rendered a different verdict, the verdict of not guilty. Importantly, this is distinguishable from the Mancius case to which the government cites. In Mancius, and Rahib made clear that something more in these 922G cases is now required. It's not enough to simply show felon status. There must be some evidence to show knowledge thereof. In Mancius, there was that something more. Specifically at trial, the government offered and showed to the jury, for example, court paperwork with Mr. Mancius' name on it. They showed a document such as a pleading charge relating to the crime of trespass, and there was testimony at Mr. Mancius' trial about that documentation. The government argued to this court on appeal that had Mr. Mancius' jury been given that proper Rahib instruction, they still could have found knowledge of felon status because they could have looked at the evidence at trial and found that knowledge. Mr. Pulliam's case is wholly different. Had his jury been given that instruction, there's nothing that they could have looked to to find that knowledge of felon status element. And this is why, Your Honors, the government relies so intensely on the pre-sentence investigation report in this case, which I believe brings the fundamental question to bear here, and the PSR we submit is not within the proper scope of this court's review today. For this reason, if we look closely at cases from this court and the Supreme Court, cases like Jones and Holmes, involving erroneous jury instruction and the effect of those instructions on a trial, we see that the question presented is, to what extent did the erroneous instruction affect the jury's decision to convict the defendant? And in those cases, Your Honors, this court has taken a retrospective look at what actually occurred at trial. What evidence did the jury consider at trial and how would that jury, on the basis of that evidence that they saw, have made a decision on the basis of a proper jury instruction? Now, there's an important reason, Your Honors, that the scope of this review is tailored and limited to the evidence actually presented at trial. And that is because defendants, like Mr. Pulliam, have not waived their six amendment jury right, which absolutely guarantees them that their innocence or guilt is decided by a jury at trial on every element of the crime charged on the basis of the evidence presented to them by the government. And in this context, Your Honors, the PSR is simply not germane to the question presented because it says nothing about what the jury's consideration would have been. It's a document that didn't exist at the time of trial. What is the PSR? Pre-trial stipulation on this element? Sorry, could you say that one more time? I apologize. What is the impact of your pre-trial stipulation on the felony conviction element? Thank you, Your Honor. I don't believe that that has any bearing on the question presented. It's important to note that the government, for the proposition that this pre-trial stipulation, um, oh, I'm sorry, Your Honor. Are you referring to the stipulation that he was a felon? Yes, the old chief issue. Absolutely, Your Honor. I do not believe that that speaks to the issue of mens rea at issue. In receive, the Supreme Court made clear that something more is required and that something more is not simply the stipulation anymore. There must be actual evidence of the knowledge and the stipulation alone. If I could interrupt just to refocus the question. It's not whether you stipulated to awareness or knowledge of status. It's that the evidence was circumscribed by virtue of the old chief in stipulation. In the sense that the government... Your argument focuses on the evidence that was presented at trial. That evidence was... Kept out by virtue of the stipulation. Of old chief. Yes, that's correct. And into account in resolving these rehave questions. Well, I think the critical issue here is that regardless of why the evidence was conscribed, what evidence the government might point to, such as the PSR on appeal. If we look at this court's precedent involving erroneous jury instructions, the focus is always and only on the evidence presented at trial. Because to speculate about what evidence was circumscribed and could or could not have come in doesn't answer the fundamental Sixth Amendment question. What we have here, Your Honor, is a case in which the government simply did not prove every element of the crime charge beyond a reasonable doubt. There's not evidence showing that in the trial record. And that simply is in conflict with the Sixth Amendment guarantee that no defendant be convicted absent that showing. And Mr. Pulliam is currently in prison, convicted of a crime where the government hasn't made that showing. And that is specifically the issue that this court should address. Now, whether the government can point to information in the PSR, which speaks to his criminal history, simply doesn't address the principle and cardinal defect of what happened at trial. There's no evidence that a jury has ever seen, regardless of what could or could not have come in. If we look at the evidence actually presented at trial, it doesn't meet the burden on every element of the crime charge. And for that reason, Mr. Pulliam's conviction stands in direct contravention of the Sixth Amendment right. And had his jury been given a proper instruction, which included that knowledge of felon status element, there's a reasonable probability that they would have rendered a verdict of not guilty. And that's exactly the type of case that this court should reverse on plain error review. And I'd also like to briefly touch on the Rule 403 argument, Your Honors. Mr. Pulliam has identified two forms of unfairly prejudicial evidence in his trial. First, there was testimony from the police officers about the dispatch calls they received on the night of his arrest, reporting supposed drug activity in the McDonald's parking lot. Moreover, there was also testimony about the $408 in cash that he had in his pocket. Now, Gomez instructs that a 403 balancing that a district court conducts must take into account what the true purpose of this evidence was, and was that purpose unfairly prejudicial? And here, the trial record and the government's brief confirms that the overriding prevailing purpose of this evidence was to show the jury and convince them that Mr. Pulliam was a drug dealer engaged in a drug transaction on the night of his arrest. To associate Mr. Pulliam, the defendant, with this illicit activity of drug dealing in a case in which no drug crimes were charged is the best evidence of this perhaps comes from the district court's own analysis. If we look at appendix pages 41 and 42, we see the district court excluded 2911 call before trial, which reported the same supposed drug dealing under a Rule 403 balancing test. And the analysis was clear. First, the district court found that these reports of supposed drug dealing and minimal probative value under 403, because this was a case not about drug crimes, it was a case about gun possession. But more importantly, it would be highly prejudicial to Mr. Pulliam to associate him with supposed drug dealing in a case that had nothing to do with drugs. And it's difficult to reconcile this analysis with what actually occurred at trial, where the government continued to use this evidence to put forward directly a narrative that Mr. Pulliam was a drug dealer. And if we look for some reconciling principle in the district court's post-trial opinion, we see intense reliance on the Schmidt case from this court. And the government relies on that case as well. It's true, Your Honor, that in Schmidt, this court did permit the use of drug evidence to show a motive to possess a firearm. But there are significant factual distinctions in the Schmidt case that, frankly, the government or the court just didn't take into account. And those distinctions are this. In Schmidt, the defendant was a known drug dealer. There was testimony about his identity as a drug dealer at his trial to the jury. Moreover, in Schmidt, the defendant was found with, as this court described, quote, large quantities of drugs. When the officers came to his house with a proper arrest warrant, they walked in and found large quantities of drugs in Mr. Schmidt's house. They found marijuana, methamphetamine, controlled substances in the form of pills. Indeed, Mr. Schmidt had traded drugs for their very gun in question. There was no speculation about the drugs in that case. This is critical, Your Honors, because if we look at Mr. Pulliam's trial record, we see no drugs whatsoever. In fact, multiple police officers searched Mr. Pulliam, searched the scene of the arrest, and found nothing at all to suggest that a drug transaction had ever occurred. No paraphernalia, no drug contraband, nothing. The area is described as very clean. This is important because it shows that the supposed drug evidence in Mr. Pulliam's case is both far less probative than in the Schmidt case because it's unfounded and it was disproven. But moreover, it's more prejudicial because it puts forward this misleading narrative in a case where no drug crimes were charged, that Mr. Pulliam was a drug dealer in the face of directly disconfirming evidence. And creating this impression is unfairly prejudicial. And the district court's failure to grapple with these inconsistencies in its own analysis and the factual inconsistency with the Schmidt case, which provides almost any reasoning on that point at all, was an abuse of discretion. And this supplies an independent reason for this court now to reverse Mr. Pulliam's conviction. Thank you, Your Honors. With that, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. Ms. Kastner? Thank you. And may it please the court, good morning. Andriana Kastanik on behalf of the United States. There was no plain error requiring reversal after the Supreme Court's opinion in post-Rahief. But he cannot establish a plain error affecting his substantial rights. The government requests that the court look at the whole record as it's done in numerous past cases post-Rahief to determine whether there was a miscarriage of justice and impact on the defendant's substantial rights. Here, the defendant has not claimed that he did not know he was a felon. And he has offered no credible defense that he planned to pursue at trial had he known of the Rahief knowledge element. This makes sense when you view the record as a whole. It makes it very clear that the defendant knew of his felony status. At the time of the trial in this case, the defendant had 10 felony convictions, a number that this court's precedents established would impair if not completely bar a ignorance of knowledge defense. He had served multiple terms of imprisonment that exceeded one year. One term was three years in duration. On five separate occasions, he had been sentenced to sentences exceeding a year. And then finally, as Judge Sykes noted, he stipulated at trial to knowing, I'm sorry, not knowing, he stipulated to trial consistent with old chief to his felony status. He raised no questions about his felony status. He never raised before or at trial a knowledge-based defense. It's a fair inference, and not the only inference, but a fair inference from the stipulation at trial that he in fact knew of his felony status. Given this record, it is well established that the defendant cannot show impact on his substantial rights or that it affected the fairness or integrity of these proceedings. There also was no error on the admission of 404B evidence in this case. The district court was well within its discretion in allowing the government to introduce evidence of the radio dispatch reporting that four men were engaged in a narcotics transaction in the McDonald's parking lot. When the police arrived to that parking lot, the four men dispersed with defendant ultimately breaking into a run, and then the police recovered $408 in cash from him upon his arrest. This evidence established the defendant's motive for possessing a firearm, either to protect the narcotics deal or to protect the large amount of cash that he was carrying when he was arrested. The defendant argues that the district court erred in its 403 analysis, and while this evidence certainly was prejudicial, the district court engaged in a fair and equitable discretionary balancing of the equities here. It limited the amount of evidence that the government was entitled to present at the trial, excluding the audio 911 calls, finding that those would be too prejudicial, and limited the government to the bare minimum details about the defendant's role in that transaction. By contrast, this played a very small amount of attention at trial. The officer's testimony was a few lines of transcript in a trial transcript that exceeded about 500 pages, and for the same reason that there was no 403 error, any error if this court were to find one in the admission of this evidence would be harmless. The officers testified based on their eyewitness observations of the defendant's possession of a firearm, throwing it into the bushes, recovering it within a minute later, and that evidence alone, even with notwithstanding any error on the 404B or 403 analysis, would be sufficient to sustain the jury's verdict here. For all of these reasons, pending any questions from the panel, the I do have a question about the theory of this motive evidence, the 403 or 404B evidence. Was it that I understood the government's theory of this a felony or a felon in possession prosecution was that this was in fact a drug deal and he was carrying the gun as part of a drug deal, not that he was just protecting the $400 he had in his pocket? Did I misunderstand the theory of the prosecution? So the government argued in its closing both of those aspects of motive. So it argued that if the defendant was engaged in a drug deal in the parking lot, that he had a motive to possess a weapon, and that the cash, even standing alone, provided a motive for him to protect the money. And so both of those were offered in response to a defense argument in closing that he had no incentive to possess the firearm. The government argued both aspects of that, and I think that they both provide a reason for the admission of this course of conduct. But there was no evidence other than the dispatch, which was conveying what I understood to be anonymous tips that there was drug dealing going on in this parking lot. That is correct, Your Honor. That is correct. And the government certainly acknowledges that that's a distinction between this case and Schmidt, which involved the actual seizure of narcotics. That did not exist in this case. It's a valid basis to distinguish this court's dispositive basis to distinguish those precedents. And for the same reason that the evidence was light on the defendant's involvement in any drug dealing or drug trafficking, that evidence also was not prejudicial, or it was far less prejudicial than, for example, the evidence in Schmidt was to the defendant's interest. Does this require... Go ahead. It invited the jury to speculate based on the dispatch, since there was no hard evidence of drug dealing. So it was extremely weak in its probative value. I think that's what the defendant's argument is, among others, that the probative value is extremely weak, so it's not remotely comparable to Schmidt. And so the prejudicial effect of inviting the jury to speculate that this was actually a drug deal going down. The government acknowledges that concern. The circumstances, however, taken together, not just the dispatch, but the defendant's response upon the police entering the parking lot, the fact that all four men dispersed in different directions, the defendant broke into a run, corroborates that there was something untoward happening in that parking lot, and then the recovery of cash further corroborates that. So the government acknowledges that the inference of drug dealing from those circumstances is not the only conclusion that could be drawn, but submits that it is a fair and reasonable conclusion. And given that it played such a small part of trial and was not argued in the closing as motive until the defendant argued in his closing that he had no incentive to possess a gun, renders the error not prejudicial and ultimately harmless on the trial record as a whole. Doesn't this really rely on propensity, though? It does not, Your Honor. This court's precedents, including in Schmidt and Elder, recognizes that participation in a drug deal, a reason to protect himself and or his money, provides a basis to believe that the defendant possessed a gun. It's not a propensity inference. The government did not argue that because he's a drug dealer, he's more likely to commit other crimes, including the crime of drug possession. Its argument, which is limited to one page in its rebuttal, was very circumscribed to motive, arguing that if the defendant was, in fact, engaged in drug trafficking, that would provide a motive. It followed that up by arguing that the government, in fact, is not required to prove motive or prove that the defendant is a drug dealer or any of those things, given the eyewitness testimony establishing that he possessed that weapon and therefore the error would be harmless when you view this record as a whole. Ms. Kostanek, who was the witness who said he saw two other people in the back of that police officer's testimony? Yes, Your Honor. There's a very slight discrepancy between the two officers' testimony. One said that he saw one person in the alley. The other one said that he saw two other people in the alley. So it may have been a difference of their perspective, the time they arrived at the alley. But it's important to note that both officers consistently testified that they saw the defendant throw the weapon in question. So they were right behind the defendant. They saw him raise that weapon and then ultimately throw it into the bushes. And when they entered the alley, they immediately put cuffs on the defendant and then recovered that gun. So the eyewitness testimony is strong insofar as creating that chain of custody over watching that gun in the defendant's hand being thrown into the bushes and recovering that gun. If there are no further questions from the panel, the government asks that this court affirm the defendant's conviction. Thank you. Mr. Franco? Thank you, Your Honor. I have a few brief points in response to the government's presentation. First on the Rule 403 argument, as Your Honor's pointed out, there was a very prejudicial impact of insinuating that a drug deal occurred before a jury in a case where there in fact was no drug deal from the words of the police officers themselves. And the government argues that this was of minimal effect to the government's case, but at the same time acknowledges that one of the central arguments that the government closed with, one of its final concluding thoughts to the jury was that, ladies and gentlemen, Mr. Pulliam doesn't want you to believe that the of the drug theory to the government's case. They were insinuating that Mr. Pulliam was a drug dealer and through that insinuation affected great prejudice upon the defendant. It's difficult to extrapolate between the insinuation that he was a defendant and the fact that he wasn't at all. And the insinuation alone in this case had a very unfairly prejudicial effect on the outcome of the trial. And moreover, it wasn't an open and shut case as the government suggests. For example, there were no fingerprints found in the gun and the jury specifically asked about this after multiple days of deliberation. In the context of this uncertainty, it's difficult to think of something that would have more of a significant impact on the trial, more change the complexion of the narrative of the case than to suggest that the defendant was a drug dealer. And finally, your honors, on the Rahif argument, the government argues that this court should take into account the whole record. It's important to note that the precedent supporting this opinion comes from a very different context. As your honors know, in cases like Douthat and Williams, to which the government cites, the court does take into account the PSR, but those cases present a very different question. In Williams, for example, Judge Sainee made clear that the question there in a case where the defendant has waived their Sixth Amendment jury right is not the effect of an error on a jury's defendant's decision to plead guilty. And so the court tries to assess whether there's a reasonable probability that the defendant would have made a different decision before the error. The PSR does speak to that issue because it tells the court something about the defendant's decision-making process. This is a very different case. Mr. Pulliam has not waived his Sixth Amendment right, which guarantees that he should not be convicted of a crime that the government has not proven every element of, beyond a reasonable doubt, to a jury. And that simply did not happen in this case. And it's important to note, your honor, if we listen to the government's harmless error analysis with regards to the 403 evidence, we see what is commonplace. It was an alleged error that occurred at trial and the government responds it was harmless on the basis of the other evidence presented at trial. Trial errors are considered within the context of what actually happened at trial. It would be strange indeed to point to something outside of the trial record that had no impact on the trial itself to argue harmlessness. But that's precisely what the government now does with the PSR. And it's improper. What we have here is a case where the government has not proven every element of the crime charge beyond a reasonable doubt to a jury. Mr. Pulliam is sitting in prison convicted of that crime. That to me seems the very quintessence of a Sixth Amendment violation. Had a proper instruction been given with that knowledge element that was not proven, there's a reasonable probability that the jury would have found Mr. Pulliam not guilty and this constitutional violation would not have occurred. With that, your honors, I request that you reverse Mr. Pulliam's conviction. With no further questions, I'll rest on my brace. Thank you. Very much. Thanks to both Castle and the case is taken under.